UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO GAS & ELECTRIC COMPANY, <br><br> Defendant. | Case No.: 24-cv-1614-RSH-MMP <br><br> **ORDER GRANTING JOINT MOTION TO ENTER CONSENT DECREE** <br><br> [ECF No. 3] |

Before the Court is a joint motion to enter consent decree [ECF No. 3] filed by plaintiffs Ecological Rights Foundation and San Diego Coastkeeper and defendant San Diego Gas & Electric Company. Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants the motion.

I. BACKGROUND

   A. Factual Background

The instant case arises from Defendant's storage and handling of chemically treated wooden utility poles and cross arms at its facilities. The Complaint alleges the following.

1

Defendant is "an electrical and natural gas utility corporation that supplies electricity and natural gas to parts of Southern California." ECF No. 1 ¶ 16. Defendant treats its wooden utility poles or cross arms with "wood preservative formulations" that contain pesticides and other chemicals, including "pentachlorophenol, chromium, arsenic, copper naphthenate, and/or 4,5-Dichloro-2-n-octyl-3(2H)-isothiazolone." *Id.* ¶ 2.[1] The treated poles or cross arms—and other wood items or fragments similarly treated—are handled and stored at certain of Defendant's Construction and Operation Facilities. *Id.* ¶¶ 2, 29. The poles are often stored outdoors in uncovered areas on racks or directly on the ground. ECF No. 1-3 at 20.[2]

Plaintiff Ecological Rights Foundation is a non-profit corporation focused on "protecting surface waters and groundwater from pollution and degradation." *Id.* ¶ 13. Plaintiff San Diego Coastkeeper is a non-profit corporation that "protects and restores fishable, swimmable, and drinkable waters in San Diego County." *Id.* ¶ 14. According to Plaintiffs, Defendant releases chemicals into the environment through the discharge of polluted storm water from Defendant's Construction and Operations Facilities. *Id.* ¶ 3. Plaintiffs allege their members, employees, and volunteers live or recreate in proximity to these facilities and have been negatively impacted by these discharges. *Id.* ¶ 15.

**B.     Procedural Background**

On September 10, 2024, Plaintiffs initiated the instant action against Defendant asserting violations of the Resource Conservation and Recovery Act ("RCRA"). ECF No. 1. On the same day, the Parties filed a joint motion requesting that the Court enter their proposed consent decree. ECF No. 3. On September 26, 2024, at the Court's direction,

---

[1]     Pentachlorophenol-based wood preservatives contain several other toxic chemicals, including "polychlorinated dibenzo-p-dioxins and polychlorinated dibenzofurans." ECF No. 1 ¶ 2.

[2]     All citations to electronic case filing ("ECF") entries refer to the ECF-generated page numbers.

the Parties filed a joint supplemental brief addressing how the proposed consent decree is procedurally and substantively fair. ECF No. 10.

## II.   LEGAL STANDARD

"A consent decree is 'essentially a settlement agreement subject to continued judicial policing.'" *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)); *see Lares v. Reliable Wholesale Lumber, Inc.*, No. 8:18-cv-0157-JLS-AGR, 2018 U.S. Dist. LEXIS 223962, at *4 (C.D. Cal. Oct. 18, 2018) ("Consent decrees are hybrids of private settlement agreements and public judgements."). "It is not a decision on the merits or the achievement of the optimal outcome for all parties, but is the product of negotiation and compromise." *Oregon*, 913 F.2d at 580. "Before approving a consent decree, a district court must be satisfied that it is at least fundamentally fair, adequate and reasonable." *Id.* "In applying the 'fair, adequate and reasonable' standard, courts examine both procedural and substantive fairness." *United States v. PG&E*, 776 F. Supp. 2d 1007, 1024–25 (N.D. Cal. 2011) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990)); *see United States v. Coeur D'Alenes Co.*, 767 F.3d 873, 877 (9th Cir. 2014) ("[W]e require a district court to review a proposed consent decree for the purpose of determining whether it is fair—not only procedurally, but also substantively."). "In addition, because it is a form of judgment, a consent decree must conform to applicable laws." *Oregon*, 913 F.2d at 580. When reviewing a consent decree, a court must independently review its terms and avoid "rubber stamp approval." *See United States v. Montrose Chem. Corp.*, 50 F.3d 741, 747 (9th Cir. 1995). The approval of a proposed consent decree rests within the sound discretion of the court. *See Oregon*, 913 F.2d at 580.

## III.   ANALYSIS

### A.   The Consent Decree

Under the proposed consent decree, Defendant is required to implement Best Management Practices ("BMPs") for waste handling and pollution prevention at six of its

Construction and Operation Facilities. ECF Nos. 3-3 ¶¶ 6, 5–24; 10 at 4–5. Specifically, the consent decree requires Defendant to implement either "Source Control BMPs" or "Treatment/Structural BMPs" that "are designed to ensure that the facilities will not discharge waste-based pollutants above agreed-upon Pollutant Action Levels." ECF No. 10 at 4; *see* ECF No. 3-3 ¶¶ 16, 21–22. The "Source Control BMPs" require Defendant to remove all utility poles treated with pentachlorophenol from its facilities and then either sufficiently clean the affected areas so that runoff leaving the facilities no longer exceed Pollutant Action Levels[3] or repave the affected areas. *See* ECF Nos. 3-3 ¶ 16; 10 at 4. Alternatively, if Defendant elects to implement "Treatment/Structural BMPs," it must implement structural improvements and filters designed to ensure that storm water flowing from its facilities does not contain pollutants exceeding Pollutant Action Levels. *See* ECF Nos. 3-3 ¶ 21; 10 at 5. Defendant may also elect not to implement either the "Source Control BMPs" or "Treatment/Structural BMPs" for any given facility if: (1) Defendant can demonstrate that existing structural BMPs at the facility are sufficient to prevent discharges of pollutants above the Pollutant Action Levels; or (2) Defendant develops and implements alternative BMPs that meet the requirements of the consent decree. *See* ECF Nos. 3-3 ¶¶ 17–20, 23; 10 at 5.

In addition to the above BMPs, the proposed consent decree imposes a number of other requirements on Defendant, including: (1) the preparation of stormwater maps for each facility; (2) "housekeeping" measures, such as site sweeping and cleaning; (3) inspection and sampling requirements to assess pollutant levels of stormwater leaving the facilities; (4) the preparation and submission of annual reports; and (5) allowing Plaintiffs to inspect Defendant's facilities. *See* ECF Nos. 3-3 ¶¶ 4–15, 27–30; 10 at 5.

//

---

[3]   Pollutant Action Levels are defined in the consent decree as specific amounts of pentachlorophenol, polychlorinated dibenzo-p-dioxins, and polychlorinated dibenzofurans. *See* ECF No. 3-3 ¶ 1.

Finally, the consent decree provides that Defendant will submit a payment to Plaintiffs in the amount of $302,500 "to defray Plaintiffs' claimed investigative, expert, consultant, and attorneys' fees and costs" and $60,000 for Plaintiffs' costs in monitoring Defendant's compliance with the consent decree going forward. *See* ECF Nos. 3-3 ¶¶ 31–32; 10 at 6. Under the consent decree, the Court will retain jurisdiction to enforce the decree until it terminates. ECF No. 3-3 ¶¶ 1, 3.

### B. Fairness

#### 1. Procedural Fairness

The Court first considers whether the proposed consent decree is the "product of a procedurally fair process." *Montrose*, 50 F.3d at 746. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Cannons*, 899 F.2d at 86; *see United States v. Electron Hydro, LLC*, No. C20-1746-JCC, 2024 U.S. Dist. LEXIS 121368, at *4 n.3 (W.D. Wash. July 10, 2024) ("When measuring procedural fairness, the candor, openness, and bargaining balance in the negotiation process are at issue."); *San Diego Unified Port Dist. v. Gen. Dynamics Corp.*, No. 07-cv-01955-BAS-WVG, 2017 U.S. Dist. LEXIS 95076, at *19 (S.D. Cal. June 20, 2017). "The district court's role in reviewing the essentially private agreement among the parties is 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" *Oregon*, 913 F.2d at 586 (quoting *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982)).

Here, according to the Parties, the proposed consent decree is the result of almost a year of extensive negotiations. ECF No. 10 at 8. Prior to filing suit, Plaintiffs investigated Defendant's facilities for years, including through site inspections and by analyzing samples of Defendant's storm water discharges in December 2018, May 2019, and March 2022. ECF No. 1-3 at 28. The Parties were represented by experienced outside counsel, in-house attorneys, and technical staff and consultants. ECF No. 10 at 8. There is nothing in the record to suggest the consent decree resulted from anything other than "good faith,

arms-length negotiations." *See Oregon*, 913 F.2d at 581; *see U.S. S.E.C. v. Volkswagen AG (In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.)*, No. 19-cv-01391-CRB, 2024 U.S. Dist. LEXIS 61787, at *4 (N.D. Cal. Apr. 3, 2024) (finding consent decree procedurally fair under similar circumstances); *SEC v. Rothenberg*, No. 18-cv-05080-JST, 2018 U.S. Dist. LEXIS 177980, at *5 (N.D. Cal. Oct. 16, 2018) (same).

### 2.  *Substantive Fairness*

The Court next considers whether the proposed consent decree is "substantively fair to the parties in light of a reasonable reading of the facts." *Montrose*, 50 F.3d at 746. "Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Cannons*, 899 F.2d at 87. "In evaluating the substantive fairness of a consent decree in an environmental case, it is important for the district court to be fully informed regarding the costs and benefits of the decree." *United States v. Chevron U.S.A. Inc.*, 380 F. Supp. 2d 1104, 1113 (N.D. Cal. 2005). The relevant standard is not whether the settlement "is one which the court itself might have fashioned, or considers as ideal[.]" *Cannons*, 899 F.2d at 84. "Rather, the court's approval is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Oregon*, 913 F.2d at 581 (quoting *Officers for Justice*, 688 F.2d at 625)). "As long as the consent decree comes within the general scope of the case made by the pleadings, furthers the objectives upon which the law is based, and does not violate the statute upon which the complaint was based, the parties' agreement may be entered by the court." *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990) (internal quotation marks omitted).

Under this standard, the Court concludes the proposed consent decree is substantively fair as it "comes within the scope of the pleadings, furthers the broad objectives upon which the complaint was based and does not violate the RCRA." *Sierra Club*, 909 F.2d at 1355. Plaintiffs' Complaint alleges Defendant violates the RCRA

through its handling and storage of chemically treated wooden utility poles and cross arms. *See* ECF No. 1. The Complaint includes a request for injunctive relief preventing Defendant from: (1) handling, storing, treating, transporting, or disposing of "any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment"; or (2) "violating the substantive and procedural requirements of the RCRA[.]" *Id.* at 21.

The Parties contend the proposed consent decree "timely address[es] the alleged ongoing RCRA violations at Defendant's various facilities." ECF No. 10 at 9. The Court agrees. Under the decree, Defendant must take specified, concrete steps to reduce the chemical discharges from its facilities to agreed-upon levels. This is substantively equivalent to the relief sought by Plaintiffs in the Complaint. *Saint John's Organic Farm*, 574 F.3d at 1060 (relief provided in settlement agreement not to engage in spraying of adulticides or truck fogging equivalent to request for injunctive relief). In return, Plaintiffs have agreed to release their claims. Further, by entering this agreement, the Parties have avoided the time, expense, and risk of litigating this case to a trial on the merits and appeal.

The proposed decree also "furthers the objectives upon which the [RCRA] is based." *Sierra Club*, 909 F.2d at 1355 (internal quotation marks omitted). The RCRA "is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. Kfc W.*, 516 U.S. 479, 483 (1996). The statute's "primary purpose is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, so as to minimize the present and future threat to human health and the environment." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (internal quotation marks omitted). Here, the ameliorative measures Defendant is required to undertake under the consent decree fall squarely within the range of solutions contemplated by the RCRA. *See Ctr. for Cmty. Action & Envtl. Justice v. BNSF Ry. Co.*, 764 F.3d 1019, 1026 (9th Cir. 2014) (the RCRA "was intended to provide two possible solutions to the discarded

materials problem" including "resource conservation [achieved] by reducing the amount of waste generated[.]") (internal quotation marks).

The Parties' negotiated resolution as to Plaintiffs' request for attorneys' fees and costs is also aligned with the RCRA's objectives. The RCRA provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing party or substantially prevailing party[.]" 42 U.S.C. § 6972(e). "The threshold for sufficient relief to confer prevailing party status is not high." *Saint John's Organic Farm*, 574 F.3d at 1059. "'If the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind.'" *Id.* (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989)). Here, as the Court already noted above, the measures the Parties have agreed to are equivalent to the relief Plaintiffs sought in their Complaint and consistent with the RCRA's goals. For these reasons, awarding costs and fees in this case is warranted. *Id.* at 1061 ("'The purpose of an award of costs and fees is . . . to encourage the achievement of statutory goals.'") (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 706 (1983)).

Finally, the Court "need not enter the minefield of hours, rates, and lodestar calculations and adjustments because no fee petition is at issue." *Lares v. Reliable Wholesale Lumber, Inc.*, No. 8:18-cv-0157-JLS-AGR, 2018 U.S. Dist. LEXIS 223962, at *9 (C.D. Cal. Oct. 18, 2018). The negotiated award of $302,500 in fees and costs and $60,000 in future oversight costs is not, on its face, unreasonable. The negotiated amount was reached only after Defendant reviewed Plaintiffs' attorney time records and costs. ECF No. 10 at 6. The Parties further represent this amount is only a portion of the fees and costs Plaintiffs' counsel expended. *Id.* at 6.

///
///
///
///

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Parties' joint motion.

**IT IS SO ORDERED.**

Dated: October 15, 2024

_____
Hon. Robert S. Huie
United States District Judge